My name is Sergei Tsoni. I represent the appellant today, Pyramid Travel. Your Honor, the central issue on this appeal, we believe, is to what extent the statements that were made to Pyramid and the facts that were withheld from Pyramid are attributable to Emirates Airlines. The district court judge found that the evidence, interpreted the evidence, and concluded that the evidence was insufficient to hold that those statements were attributable to Emirates. And we submit that's an error. We submit that in doing so, he's usurped the role of the jury, because when you look at what he says and what is done and what the facts are, we know the following. Beginning in 1998, Emirates Airlines took over the management of Sri Lankan Airlines. They had complete authority to operate it. They ran the management in its day-to-day operations. They appointed the CEO and a management team to work with him, and they appointed directors. That management team, headed by Mr. Peter Hill, then undertook to operate the day-to-day actions of the airline. And two members of that management team, both of them appointed by Emirates, Mr. Jayaseelan and Mr. Hill, together in April of 1999, made a decision that they acknowledged. The decision was they did not want to have Pyramid continue as the GSA, the General Sales Agent, on behalf of Sri Lankan Airlines. That decision was then implemented by Mr. Jayaseelan, a member of Emirates' management team, through the actions of Mrs. Virasinghe. Mrs. Virasinghe reported to Mr. Jayaseelan, acknowledged that she received instructions from him that they did not intend to renew their relationship with Pyramid Travel, and specifically directed her to prepare an action plan on how to transition to new GSAs. Mrs. Virasinghe reported to him that she could not effect a transition before the expiration of the existing term, and it is uncontroverted that Mr. Jayaseelan directed Mrs. Virasinghe to obtain a three-month extension renewal with Pyramid Travel. That is what she did. In the course of doing so... under these circumstances. Pyramid is a California corporation. What Mrs. Virasinghe did in order to obtain that three-month extension term was made a number of representations that were false. First, she said that the open selection process was required by the Board. The Board was not consulted, did not require it, and did not have a policy for it. Second, she said that this was being implemented worldwide. In deposition testimony, she admitted that was not true. Who did she work for? I'm sorry? Who did she work for? Sri Lankan Airlines. That's the problem. You've got to find some independent act on the part of, not Sri Lankan, but Emirates, don't you? Certainly, Emirates is the one that we are trying to attribute the conduct to. Right, and under California law, you've got to show an independent act by Emirates. Correct. You're showing a lot of stuff by Sri Lanka. Well, let's look at that, Your Honor. And all you have to tie the two is that Hill deposition, which really doesn't go very far in accomplishing that, does it? No, I believe we have much more than that. What we have is a management team set up by Emirates. We have that management team effecting its decisions and implementing them through agents that it controls and instructed. What do you mean by agents? Mrs. Virasinghe. They were agents of? In conducting this conduct, in making these statements, she was doing so at the direction of the Emirates management team. Where is that in the record? It's in her deposition. She said I was doing, I did all of this as an agent? She doesn't say that she did it as an agent. She said she did it at his instruction. She acknowledges that he's, he acknowledges he's part of the management team. The judge acknowledged that Mr. J.S. Thielen was part of Emirates management team. That management team could as easily have had a third party, a stranger, make statements. That would still be attributed to the management team. That management team did not itself have to have one of its members make those statements.  If they are made at the behest of, under the instruction and under the control of, they are attributable to the principal. The principal here is the Emirates management team, which is Emirates Airlines. Consequently, the conduct by Mrs. Virasinghe in making the false statements to induce Pyramid to continue to serve are attributable to Emirates Airlines. The district court reached the conclusion that they were not. If there is any dispute, it is a dispute as to facts, and it should have been reserved for the jury to decide. If he felt that it was not absolutely clear that her conduct was pursuant to instructions from the Emirates management team, in furtherance of their objectives, and with their ratification to achieve their objectives of extending that term, then he should have allowed the jury to evaluate that. It is not possible on this set of evidence and on this set of facts for him to have concluded that no reasonable jury or no reasonable juror would have found that she was not active. Now let me understand the cast of characters here. Your client is a California travel agency? They are a travel company. Travel company. They represent foreign airlines in the United States for the purposes of increasing travel across that airline. Emirates Airlines at the time did not travel between points in the United States and overseas. But your work was for Sri Lankan? Our work was for Sri Lankan Airlines, which was also an airline that didn't travel between the U.S. and other countries. What they did for Sri Lankan Airlines was encourage agents to promote the services of Sri Lankan Airlines for travel. In California? In California and throughout the United States to encourage passengers to book flights if they wanted to go from Frankfurt to Sri Lanka or Sri Lanka to London, they could fly Sri Lankan Airlines. And that was an alternative to the myriad of other alternatives that were available to passengers. Now your claim is that the Emirates interfered in your relationship with Sri Lankan Airlines. Correct. By doing what exactly? We had 18 years of relationship, continuous relationship with Sri Lankan Airlines until Emirates Airlines took over its management. In the course of managing that airline, it made a decision to terminate our relationship, not renew it, and prevented us from meaningfully being considered, fairly being considered in an open selection process. You say that that is tortious under California law? That's correct. Correct. Why isn't it okay for someone who takes over management of a company to say, I don't think you ought to be doing business with these people anymore? We don't think they're very good. What's tortious there? If the statements are made falsely and fraudulently to induce ongoing reliance and to provide additional services, that's a wrongful tort in California. That's a fraud. If the statements are made... How is this going to benefit... The statements are being made to whom? They're being made to my client, to Pyramid.  I just guess I don't understand the malicious interference. Emirates Airlines... Sri Lankan Airlines had a right to do business with my client if they wanted to. They had done so for 18 years, and my client had a right to continue to have that relationship. If Sri Lankan Airlines had wanted to terminate my client's relationship independently, they could have, for good reason or for bad. But for Emirates Airlines to intercede and for its own purposes, for malicious purposes, interfere with that relationship... Well, I understand that. I understand that if you have three parties. Right. Now, I thought what you said was that Emirates was taking over the management of Sri Lankan Airlines. Correct. For purposes of what? Day-to-day operations. Day-to-day operations. So they're operating the airline. So you no longer have any third party interfering with a contractual relationship of two other parties. But you do. How? If I were, and I'll use my analogy, if I were retained as a manager to run the day-to-day operations of a corporation, I am not that corporation. I am still a separate third party. I am engaged to do things. Sri Lankan Airlines is a national corporation of Sri Lanka. The majority ownership is by the government of Sri Lanka. A separate entity. A separate entity. Correct. When Emirates Airlines acquired a minority interest in it, it became a shareholder of it. It did not become the corporation. When it took over the management, it became an employee, an executive, so to speak. It operated the airline. It became responsible for the contractual relations of that company. That is true. But if there was a breach of any contractual relationship, Emirates Airlines didn't suffer that. Sri Lankan Airlines suffered that.  But it had the right to enter into contracts on behalf of the corporation. So the management must be recognized as something distinct from the corporation itself. We still have three entities here. The question then is, is someone retained to conduct management of a business entitled to make false statements and to interfere with existing relationships between that corporation and its distributors, sales representatives, and the like? Well, let me just read you. You've got a very experienced district court here. And the court says, even if the court were to adopt pyramid theory, that while Emirates and Sri Lankan Airlines are two separate entities, Emirates, acting through its agents who were seconded to Sri Lankan, committed fraud in order to induce pyramid to extend the pyramid general sales agent agreement for a period of three months and to participate in the open selection process. And here's the kicker and why you might not get by summary judgment. Pyramid fails to show why the statements allegedly made by Veera Singh and Goyes, however that's pronounced, should be attributed to Emirates. Unlike Hill and Jerisalem, who were seconded to Sri Lankan Airlines by Emirates, pyramid has no evidence to show that Veera Singh and Goyes are anything other than employees of Sri Lankan Airlines. While pyramid notes that Veera Singh testified that she reported to Jerisalem and she would carry out any instructions, it does not present any evidence showing that Jerisalem or any other individual connected to Emirates instructed Veera Singh to make the statements that it contends were fraudulent. Is that wrong? I think you focus on precisely the language that I was looking at, and I think that last portion of that is incorrect. Mrs. Veera Singh is somebody who was not on Emirates' management team, but she was acting at the instruction of the management team and she was under his control. Generally, but where he says there's no evidence that the statements that it contends were fraudulent were caused by Emirates instructing Veera Singh to make those statements, that that was independently done by somebody who belongs to Sri Lankan Airlines. Here I think there are two mistakes. First, I think he cuts it too finely. What we know is the following. Mrs. Veera Singh was asked, instructed, directed by Mr. Jerisalem to secure an extension of the contract by three months. She did so. She did so making statements that were false. But was she told to make false statements, or was that a frolic of her own? We don't know the answer to that. The jury has a right to evaluate that and to weigh it. See, but Judge Byrne says now you're getting into speculation. There's no evidence that this was caused by the other party, and so you can't get by summary judgment. What Judge Byrne was looking for was direct evidence that he, that the- What is the circumstantial evidence? I understood the circumstantial evidence to be that there was some dispute sometime ago between Emirates and your client. That relates to motive. That relates to why Emirates was seeking to terminate this relationship. But it doesn't show that they did. How much of an interest did your client or did Emirates have in this transaction? How much of a shareholder interest? Yeah. They were about 40 percent, Your Honor. Forty percent. Of Sri Lankan Airlines. Okay, and they ended up with a contract. They didn't get the contract. They assigned it to a third party. Third party. Sri Lankan Travel, which didn't satisfy the minimum advertised criteria. But let me return, if I might, to the inquiry here. The issue- They wanted that business. They owned 40 percent, and they wanted that- They wanted Pyramid out. They didn't care who came in. They wanted Pyramid out. Well, but they wanted the business, too. They had the management control of the business, and they had 40 percent of the airline. Travel business. Emirates Airlines has no interest in Sri Lankan travel that we know of. The subsequently appointed GSA is unrelated to Emirates Airlines. Your argument about whether this survives summary judgment is right on the money, but the question is, does it? And what you have here is a judge telling you, look, summary judgment is on the table. All the evidence is there. If you were to obtain a verdict in your favor, I'd throw it out because it's not supported by enough evidence. That's what really summary judgment amounts to. If you can't put to me a case that's going to hold up if you accomplish your result, then we're not going to even allow the game to start. And that's what he's saying. If this is all you have, I'm not upholding it. And you're saying that's wrong. That's absolutely wrong. And it's wrong because where you have evidence of control, instruction, the agent asked to do so, accomplishing it. The fact that the particular agent wasn't instructed to make false statements is not dispositive. A principal is liable for an agent's false statements, whether the principal knows of it or not. And that's a problem because you have to maintain the position that these are two separate entities in order for you to sustain a tortious interference claim. Correct. And so now you've got an agency going at a time at the same time when you have to disclaim any connection between the two in an agency context. I don't think so, Your Honor. The principal that we're maintaining is Emirates Airlines. The agent that we're maintaining is Mrs. Verisign. The principal, the management team appointed by Emirates, directed the agent, Mrs. Verisign, to secure an extension. Yeah, but not to commit fraud. So now you're saying we should attribute. You've dropped your idea that there was direction to do this, and now we're supposed to attribute it via some agency theory. And then the agency theory stems from a minority control stockholder. It stems not just from a minority stockholder, but from a management control agent, a representative, the management team. Where is Mrs. Verisign? I'm sorry? Where is she working? She works in Sri Lanka. Judge Byrne was saying unless you can show that she was instructed to accomplish this end by means of fraud, you don't have any tortious, tortious interference. Here are the facts. You would if they said, look, use fraud and get rid of this thing. Then you would have tortious interference, maybe. Here are the facts that were on the record that Judge Byrne didn't identify in his order. Mrs. Verisign knew prior to October 1999 that Mr. Jez Seelan and the Emirates management team did not want Pyramid Travel to be renewed or to continue as a general sales agent. Let me please finish. Go ahead. Number two, she was directed to prepare an action plan for the transfer. So she knew that there was no intention to allow Pyramid to continue. She was asked to go and get an extension. In the course of asking Pyramid for an extension, she told them this is a board-required open selection process. It's routine. It's worldwide. And it does not impact. There is no hindrance to your being reappointed. Those statements were all false. She made those statements in furtherance of the direction by Mr. Jez Seelan and the Emirates management team at the instruction and to achieve their objective. Those are necessarily attributable to the management team because she made them. In addition, the subsequent statements in January and February were all induced to force or to encourage Pyramid to continue its good behavior, serving as a general sales agent. And ultimately, Mr. Hill, on the eve of the decision, again reiterated the false representation that there was no impairment to their continuing to be able to do business with Sri Lankan Airlines, that they were most qualified and they were going to get appointed. All these statements were false. They were all made for the specific purpose of securing the benefit of the additional time while they secured an alternate GSA. In addition, what they didn't tell the world and they didn't tell Pyramid is that there were not four conditions in the advertised open selection process and that the four conditions were not necessarily required. They said in the advertisement and they told Pyramid they were all required. The fifth condition that was not disclosed is that the candidate for GSA couldn't be Pyramid. It would never be selected. That was preordained. They decided that in April of 1999. I'm sorry? The damages are? The damages are that they were forced to continue doing business and that the fraud in connection with the open selection process deprived the best candidate, Pyramid Travel, from receiving the GSA agreement and continuing. And there is substantial economic value in that. They've served for 18 years. They developed the business. They grew it in the United States from $400,000 to over $5 million a year. And all of that represented value. It wasn't fair to your client. I'm sorry? It simply wasn't fair. Yeah. All we're asking for is when you tell us that you're going to be fair and open and these are the criteria, let us play the same game. Okay. Thank you. More than you used your time. Your Honors, may it please the Court. I think Judge Trott and the rest of the panel has put their finger on the problem that Pyramid has with this case and the problem that Judge Wren recognized with it. And that is there's nothing tying Emirates to any of the conduct that's alleged to have occurred. It is undisputed that the employees in question, and even after all these years I might not get the names exactly right, Wera Singh was a 20-plus year employee of Sri Lankan Airlines. J.S. Seelan, contrary to efforts to sort of mask where he was employed, he was employed for over 20 years by Sri Lankan Airlines. Lachman Guise, the third individual who sort of plays a minor role, employed for over 20 years. Peter Hill, seconded in a special employee relationship, as California would describe it, to Sri Lankan Airlines. Only reporting responsibilities are to the Board of Sri Lankan Airlines. Has no reporting responsibility to anyone at Emirates. As Judge Byrne pointed out, and as you acknowledge, Your Honor, there's just no connection here. This has been a matter that has been litigated in various forums around the world. The same day that this complaint was filed against Emirates, another complaint was filed against Sri Lankan Airlines and Sri Lankan Travel in Judge Trevesian's court. He granted Sri Lankan Airlines' motion to compel arbitration in that case, and the Ninth Circuit upheld that. Prior to... But that was a suit against Sri Lanka? Sri Lankan Airlines and Sri Lankan Travel and a principal. It's in the record, Your Honor. By Pyramid. By Pyramid. In addition, in March of 2000, even before the GSA agreement expired, Pyramid filed a lawsuit in Sri Lanka. It named the government of Sri Lanka. It named Sri Lankan Airlines. It named about a dozen individuals. And it indained Emirates. Now, the interesting thing about that case, Your Honors, is in that case, the complaint, Pyramid's complaint, describes the government of Sri Lanka as having, quote, legal and pervasive control over Sri Lankan Airlines. This is in March of 2000. It describes the airline as, quote, an agency and instrumentality of the state. These are in the record at page 194. That case was resolved against Pyramid as well. This case went to summary judgment. There was additional pleadings filed on an ex parte basis. There was a motion for reconsideration filed. All of that's in the record. And, Your Honors, we just don't see it. They apparently were unhappy at the way things turned out. But that doesn't mean that they have a claim against our client, Emirates. They may have a claim against Sri Lankan, and they're pursuing that claim against Sri Lankan Airlines. But they don't have a claim against us. This notion of a vendetta, as you all know, vendettas after Korea Supply and after this court's opinion in Marin Tug, which had facts pretty close to these, vendettas don't matter, if you will, for purposes of this issue. They have to be independently tortious. There's just no fraud here against our client. And having had the pleasure of appearing before Judge Byrne for a long time, you're right. He's very experienced. He doesn't grant these things lightly. And he looked at it and drew the reasonable and justifiable inferences from the evidence. Well, there may well have been fraud. I mean, we don't know that, but there could be. But not against us. There may well have been led down the garden path to provide services, thinking that they were going to be. Right. And be retained in a long-term relationship when they weren't. But there's no evidence, Your Honor, that anything like that came as a result of anything Emirates did. That's a different issue. There's no indication that Vera Singh was told by anybody from Emirates. They try and sort of slide. Was there evidence that Vera Singh said those things? There was evidence that there were conversations around those times. But what was said in those conversations, not surprisingly, the individuals involved somewhat differ on exactly what was said. What eventually happened with the provision of these kinds of services? There was another GSA appointed. They had a contract for the entire period of time. Somebody else was selected. Right. And by the way, that happens as a regular course in these situations. So, Your Honors, we really don't get it. We really don't understand how, as Judge Byrne concluded, that there's any basis for any claim against our client. Well, who is Gerasalin? Who is he, Your Honor? Yeah. He is an employee of Sri Lankan Airlines. He's been an employee, and this is in the record at page 268. He's been an employee of Sri Lankan Airlines for, at the time this deposition was taken, just over 22 years. Does he have any connection with your client? No. At least on this record. He's not an employee. Okay. Right. Well, how about Ms. Singh? Does she have any connection with your client? No. She's been an employee of Sri Lankan Airlines for over 20 years. Okay. Any further questions? Who controls Sri Lankan Airlines? Sri Lankan Airlines is owned, majority owned, by the government of Sri Lanka. Fifty percent? Well, at the time of this arrangement, Your Honor, I think it was about 28 percent was owned by my client. Seventy-two by the government. Now it's around, now it's 60-40. But they own, they own a majority, they have a majority of the board, the government does. They're the chairman of the board. Any further questions? Thank you, Your Honors. Thank you. Thank you. You haven't used your time. The matter just argued is submitted for decision.
judges: Schroeder, Pregerson, Trott